# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan Humphrey Lefkow | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1403 | **DATE** | 5/23/2003 |
| **CASE TITLE** | Kucala Enterprises vs. Auto Wax Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report and Recommendation submitted to Judge Lefkow. It is recommended that Defendant's Motion for Sanctions against Plaintiff [#104] be granted. Further, it is recommended that this case be dismissed with prejudice. All outstanding motions are, therefore, moot. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. AK

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | 7 | | Document Number |
|---|---|---|---|---|---|---|---|
| | No notices required. | | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | MAY 27 2003 | | |
| | Notified counsel by telephone. | | | | date docketed | | 127 |
| | Docketing to mail notices. | | | | docketing deputy initials | | |
| | Mail AO 450 form. | | | | 5/23/2003 | | |
| ✓ | Copy to judge/magistrate judge. | | | | date mailed notice | | |
| | FT/ | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 03 MAY 23 PM 2: 25 | | FT | | |
| | | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KUCALA ENTERPRISES, LTD.      )
                                    )  Case No. 02 C 1403
        Plaintiff,           )
                                    )
        v.                   )  Judge Joan H. Lefkow
                                    )
AUTO WAX COMPANY, INC.        )  Magistrate Judge
                                    )  Arlander Keys
        Defendant.           )

DOCKETED

MAY 2 7 2003

TO: THE HONORABLE JOAN H. LEFKOW
    UNITED STATES DISTRICT COURT JUDGE

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant, Auto Wax Company, Inc.'s, motion for sanctions against Plaintiff, Kucala Enterprises, Ltd. For the reasons set forth below, the Court recommends that Defendant's motion be granted. Further, the Court recommends that this case be dismissed with prejudice.

## PROCEDURAL HISTORY

Kucala Enterprises, Ltd. ("Kucala")[1] and Auto Wax Company, Inc. ("Auto Wax") are both in the auto care products industry and both manufacture and distribute automobile detailing clay. The

---

[1] Throughout this opinion, the Court uses the name "Kucala" to refer to either Kucala Enterprises, Ltd. or John Kucala, its owner. The Court finds the term "Kucala" sufficient in describing both the individual and the entity, because both are so closely related and essentially when referring to one, the other is necessarily invoked.



initial litigation in this case concerns the validity and
enforceability of an Auto Wax patent for a particular type of
automobile detailing clay, covered by Auto Wax's '993 and '416
patents (the "Auto Wax Patent"). In August 2001, Auto Wax sent
Kucala a letter, which discussed pending litigation between Auto
Wax and another automobile detailing clay manufacturer, Mark V
Products, Inc. ("Mark V")(the "Mark V Litigation"). Concerned
that it would be the subject of a lawsuit for infringement of the
Auto Wax Patent, Kucala filed the complaint herein on February
26, 2002, seeking a declaratory judgment against Auto Wax, which
would declare the Auto Wax Patent invalid, and thereby allow
Kucala to continue to manufacture and sell its own clay without
fear of prosecution by Auto Wax. Auto Wax subsequently filed a
countersuit against Kucala, alleging that Kucala is infringing
the Auto Wax Patent.

Upon motions by both parties, a protective order was entered
on November 26, 2002. On December 13, 2002, the district court
granted Auto Wax's discovery request, including the request to
"inspect the process of manufacture..." of clay. *Kucala Enters.,
Ltd. v. Auto Wax Co., Inc.*, No. 02-C1403 (N.D. Ill. December 13,
2002)(order granting motion to compel). The district court
ordered the production to be via computer files or hard copy.
*Id.* After Kucala failed to respond to the request for

inspection, the district court granted Auto Wax's second and then third motions to inspect. *See Kucala,* No. 02-C1403 (N.D. Ill. January 23, 2003)(order granting second motion to compel); *Kucala,* No. 02-C1403 (N.D. Ill. February 11, 2003)(order granting third motion to compel). Finally, on February 28, 2003, at approximately 3 o'clock in the afternoon, the inspection of Kucala's desktop computer commenced at Kucala's attorney's office. (Pl.'s Resp. at 4).

After discovering that Kucala had installed and used software called "Evidence Eliminator" on his computer, Auto Wax filed a motion for sanctions against Kucala, claiming that it has been severely prejudiced by Kucala's deletion of relevant discovery from his computer. Auto Wax requested an evidentiary hearing on the issue of sanctions. The Court granted Auto Wax's request and heard both parties' arguments, as well as testimony from Kucala, on April 21, 2003.

## MATERIAL FACTS

On February 28, 2003, pursuant to court order, Auto Wax's computer specialist, Jason Velasco, inspected Kucala's desktop computer and filed a report with respect to the inspection. (Def.'s Mot. for Sanctions, Ex. A.) The report states that software called "Evidence Eliminator" had been installed on the computer and was last accessed on February 28, 2003, at

3

approximately 4 o'clock in the morning. *Id.* The report further states that, between midnight and four o'clock in the morning, 12,212 files were deleted and overwritten on February 28, 2003, and that 2,968 files were deleted and overwritten on February 25, 2003. *Id.*

In July 2002, Kucala purchased a software program called "Evidence Eliminator," which he downloaded from the website www.evidence-eliminator.com. (Hr'g at 18; Def.'s Resp. at 3.) The website that sells the Evidence Eliminator software touts its product as "protection..." that will "defeat EnCase and other Forensic Analysis equipment...." (Def's Mot. for Sanctions, Ex. A.) The claims made by the manufacturer are that Evidence Eliminator will delete or "clean" computer hard drives of "deadly evidence" that may have been deleted by the user, but still remains embedded in the computer's memory. (*Id.*) Promoted as "data destruction technology," the software allegedly "destroys" the "unwanted data hidden in [the hard] drives...." (*Id.*) The language goes on to warn the potential buyer that "[d]eleting 'internet cache and history' will not protect you" and that "EnCase...can recover evidence from parts of your hard drive...that you had cleaned." (*Id.*) The marketing of the software appears to be geared to internet users who download certain web pages, pictures, and videos from the internet that

4

may lead to investigation by local or federal authorities or by their employers. (*Id.*) Once installed, a window opens up on one's monitor prompting the user to "[c]hoose the method that suits your policies for the secure destruction of files. Practically, any of these options will keep you safe from snoops." (*Id.*, App. B.)

Prior to the inspection, on February 17, 2003, to be exact, Kucala's attorney asked Auto Wax's attorney to divulge the name of the computer specialist, the procedures the specialist would use, and the computer programs that he intended to use to inspect Kucala's computer systems. (Def.'s Mot., Ex. C at 20.) Not satisfied with Auto Wax's response that the specialist will be creating a "forensic image" of the hard drive, (*id.* at 22) Kucala's attorney asked for further elaboration, including the method of data extraction, as well as the device to be used and the medium and format of retention. (*Id.* at 23). On February 25, 2003, Auto Wax's attorney replied and provided greater detail, including divulging the name of the software to be used for the forensic imaging – EnCase. (*Id.* at 27.)

At the hearing, Kucala testified that his computers were used for personal and business purposes (hr'g at 17), but that no business documents were stored on the computers–everything was "backed up" on a cd-rom. (*Id.* at 23). Kucala admitted that,

prior to purchasing Evidence Eliminator, he started "cleaning his hard drive," or deleting documents, which he deemed "irrelevant," from his computer in July 2002. (*Id.* at 14-15.) Kucala also testified that "deleting and cleaning are different" and that he "cleaned his temporary internet files and internet cache." (*Id.* at 16.)

When asked if he had produced all documents on his computer system, he replied that he had produced all printed and electronic documents that were in his possession. (*Id.* at 15.) He explained that, if the documents were deleted, they were no longer in his possession, and therefore, he could not produce them. (*Id.*) He testified that it is not in his "normal course of business to print every document and keep it." (*Id.* at 33.) Kucala had previously admitted (in his motion for reconsideration of the district court's earlier decision denying Kucala's motion for a protective order over third party subpoenas) that certain documents had not been produced, because he had deleted those documents in the normal course of business, but he promised that they would ultimately be produced pursuant to the inspection of his computer. (Def.'s Mot. for Sanctions, Ex. B.) In his motion for reconsideration, Kucala asked that the court deny Auto Wax's third party discovery requests, because the information could be readily obtainable by Kucala. (*Id.*)

Kucala also admitted running Evidence Eliminator on another computer and to throwing away a third computer at the end of 2002, because it crashed and was no longer of any use to him. (Hr'g. at 16-17.) Kucala admitted that he did not inform the court or Auto Wax of his actions (*id.* at 23), and explained that he has never been involved in litigation before. (*Id.* at 23.)

Kucala testified that, contrary to his attorney's advice, (*id.* at 25, 32) he deleted documents because he was afraid that Auto Wax would not honor the protective order that is in place. (*Id.* at 25.) Kucala asserts that he received a communication on May 13, 2002, from Mark V warning him that Auto Wax had violated the protective order established in the Mark V Litigation. (*Id.*) However, when prodded about his knowledge of Auto Wax's prior alleged misconduct, Kucala could not provide any examples, save for the Mark V Litigation. (*Id.* at 26.)[2]

Auto Wax produced a letter from EcoLab, one of Kucala's customers, dated July 19, 2002, that states it is a follow up to Kucala's letter of November 13, 2001. (*Id.* at 33.) Kucala

---

[2] In the Mark V Litigation, the Special Master, in its order dated April 12, 2001, did not find that Auto Wax had breached the protective order in place. (Def.'s Ex. 2.) The Special Master went on to say that, even if Auto Wax had breached the protective order, Mark V's remedy was to file a motion for sanctions, not "avoid legitimate discovery" by withholding evidence. (*Id.*)

admits that the EcoLab letter refers to infringement-related issues. (*Id.* at 37.) He also admits that he understands that he has an obligation to retain documents in litigation and that he is not the one to decide what documents are relevant. (*Id.* at 34-35.)

Kucala admits that he sends and receives e-mails to his customers, but does not keep them because he sends and reads e-mails from various Kinkos stores, using his "hotmail" account. (Id. at 38-40, 73.) Further, he disputes Auto Wax's claims that he has not provided it with a single e-mail, but when asked to cite to a particular e-mail, he could not recall any e-mails that he claims he has produced. (*Id.* at 39-40.) Further, Kucala wrote a letter to Tadao Kodate, the patent holder of the Auto Wax Patent, informing him that Auto Wax was seeking to "dishonor" him by declaring his Auto Wax Patent to be invalid. (Def.'s Ex. 4.) Kucala did not produce this letter, because he did not keep a copy of it, and he argues that it is not a "letter" *per se* but an email. (Hr'g at 40-41.) Auto Wax states, and Kucala agrees, that Kucala has only produced two invoices but that he has over 200 customers. (*Id.* at 58.)

Auto Wax argues that Kucala's use of the Evidence Eliminator program on two computers, as well as throwing away an older computer, and otherwise destroying discoverable information and

documents, has severely prejudiced Auto Wax in that Auto Wax cannot discover evidence to successfully defend itself in the underlying action. Auto Wax is seeking a default judgment against Kucala, as well as attorneys' and experts' fees and costs related to Auto Wax's discovery in this case.[3] In the alternative, Auto Wax asks the Court to enter several orders limiting Kucala's available defenses and entering his alleged destruction of evidence into the record if an infringement case should proceed against Kucala.[4]

## DISCUSSION

The Court is authorized to sanction a party for discovery violations, including the failure to preserve evidence material to the litigation. FED. R. CIV. P. 37 (2003). Further, Federal Rule of Civil Procedure 26 requires the production of all non-privileged documents that are "relevant to the subject matter

---

[3] Kucala has filed a Motion to Strike [the] Declaration of Jason Velasco. The Declaration was submitted to the Court on April 30, 2003, after the hearing had already taken place. The Court grants Kucala's motion and therefore, it has not and will not consider the Declaration in reaching its decision. However, the Court notes that the absence of Mr. Velasco's Declaration will not affect its final decision on the issue of sanctions against Kucala.

[4] Auto Wax also requested an evidentiary hearing on this motion, which the Court previously granted, such hearing having taken place on April 21, 2003. Thus, Auto Wax's request for a hearing, as well as its request for relief from Exhibit A of the Protective Order signed by Mr. Velasco until such hearing occurs, are moot.

involved in the pending action." Although such documents may not always be admissible at trial, they are still discoverable if they are "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26.

Courts have broad discretion in deciding the appropriate sanction for a party's discovery violation, and the type of sanction administered generally depends on the unique factual circumstances of the case. *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642 (1976). The court should ensure that the sanction be proportionate to the offending conduct. *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 303 (7th Cir. 1994)(upholding decision to dismiss case with prejudice as a result of plaintiff's repeated failure to comply with court orders).

The Seventh Circuit has stressed that the sanction of default (in the case of a defendant) or dismissal (in the case of a plaintiff) be applied only in extreme scenarios or when lesser sanctions have proven futile. *Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir. 1981). However, a court is not required to first impose less drastic sanctions. *Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 11138-39 (7th Cir. 1987)("[a] district court is not required to fire a warning shot.").

However, a default judgment is an appropriate sanction if

the sanctioned party acted with willfulness, bad faith or fault. *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996). The Seventh Circuit finds "fault" in the context of sanctions if the violative conduct is unreasonable – it does not rely on the party's subjective motivation for the violative action. *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997)(citing *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992))(in both *Langley* and *Marrocco*, the court found "fault" in the sanctioned parties' poor judgment). Fault could also entail "gross negligence," or "a flagrant disregard" of the duty to "preserve and monitor the condition" of material evidence. *Marrocco*, 966 F.2d at 224.

Parties in litigation have a fundamental duty to preserve relevant evidence "over which the non-preserving entity had control and reasonably knew or could reasonably foresee was material to a potential legal action."[5] *China Ocean Shipping (Group) Co., v. Simone Metals, Inc.,* No. 97 C2694, 1999 WL 966443, at *3 (N.D. Ill. Sep. 30, 1999). A party that causes spoilation or destruction of evidence is subject to harsh

---

[5] E-mails and other electronic documents are discoverable, as are deleted documents still located in a computer's hard drive. *Byers v. Illinois State Police*, No. 99 C8105, 2002 WL 1264044, at *10-11 (N.D. Ill. June 3, 2002).

sanctions if the actions serve to prejudice the other party. *Danis v. USN Comm., Inc.*, No. 98C 7482, 2000 WL 1694325, at *31 (N.D. Ill. Oct. 23, 2000). Spoilation of the evidence could result in dismissal of the underlying case or a default judgment being entered against the violating party. *See MPCT Solutions Corp. v. Methe*, No. 99 C 1000 WL 495115, at *2 (N.D. Ill. July 2, 1999); *China*, 1999 WL 966443, at *5.

In *Methe*, the accused violation was similar to the case at hand, in that the defendant deleted files from his laptop computer after receiving notice of the court's preservation of evidence order. *Methe*, at *2. The court admitted that it did not know, and probably could never uncover, whether any information that was deleted was ever provided to plaintiff. *Id.* Nevertheless, the court found that the deleted information, as well as other possible evidence, was no longer recoverable because the computer system had subsequently been defragged or cleaned up. *Id.* Even without knowing the type of information that was deleted, the court ordered sanctions against the defendant for his actions. *Id.*

Further, the court in *China* explained that dismissal with prejudice was the "only reasonable and appropriate sanction" to serve upon the plaintiffs who failed to preserve a "critical piece of evidence." *China*, 1999 WL 966443, at *5. The court

12

found that the plaintiffs were at fault for destroying the evidence over which it had a specific duty to maintain and preserve. *Id.* at *2-3. The plaintiffs' failure exhibited poor judgment in losing control of the evidence. *Id.*

Auto Wax has cited to a number of cases from other jurisdictions with similar fact patters to the case before the Court, where the respective courts have ordered dismissal or an entry of a default judgment against parties that engage in document spoilation. *See Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472 (S.D. Fla. 1984)(entry of default judgment against defendant as a result of defendant destroying documents with the intention of preventing their discovery); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D. Fla. 1987)(held that default judgment is the only appropriate sanction for destroying documents, which resulted in prejudice to the plaintiff by the irretrievable loss of the documents); *Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 593 F. Supp 1443 (C.D. Cal. 1984)(entry of default judgment and costs against defendant for destroying documents and erasing computer tapes and discs preventing plaintiff from presenting critical evidence to a jury); *Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 133 F.R.D. 166 (D. Colo. 1990)(default judgment only appropriate remedy against defendant who destroyed all copies of its source code despite

13

duty to preserve as evidence materials within its control);
*Century ML-Cable Corp. v. Carrillo*, 43 F. Supp. 2d 176 (D.P.R.
1998)(held that defendant's willful destruction of his laptop and
business records justified entry of default judgment against him
and order to pay attorneys' fees and costs). These cases show
that courts in other jurisdictions have not hesitated to enter
default judgments against parties who destroy or otherwise cause
spoilation of evidence.

The Court is not convinced that Kucala did not act willfully
and with the purpose of destroying discovery by purchasing and
then using Evidence Eliminator on his computer. Any reasonable
person can deduce, if not from the name of the product itself,
then by reading the website, that Evidence Eliminator is a
product used to circumvent discovery. Especially telling is that
the product claims to be able to defeat EnCase, the forensic
imaging program used by Auto Wax to inspect Kucala's computer.
Kucala knew that Auto Wax planned on using the EnCase software,
and he proceeded to install Evidence Eliminator anyway, even
after he was advised by counsel not to use it. (See Pl.'s Resp.,
Kucala Aff. at 2.)

Kucala's attorney continuously argued that there was no
evidence presented that proves Evidence Eliminator actually does
what the website purports it does-delete or destroy evidence.

14

(Hr'g at 14, 22, 69.)  Further, his counsel argued that, even if Evidence Eliminator does work, Auto Wax has not shown that the deleted files were anything more than Kucala's personal files and thus irrelevant to the case.

Although it is true that the Court has no evidence that Evidence Eliminator actually deleted relevant information, Mr. Velasco has reported that over 14,000 files had been deleted from Kucala's computer.  The possibility that relevant documents were included in that mass deletion is something this Court cannot overlook-especially given the nature of the Evidence Eliminator software and Kucala being advised by counsel not to use it.

Further, Kucala's testimony and the brief he filed with this Court appear to contradict one another.  At the hearing, Kucala was adamant that he was only deleting personal files from his computer.  But, in his response, he states that "[t]he incidental and unnecessary business information that was deleted by [his] actions was unrelated to the issues of non-infringement and patent invalidity." (Pl.'s Resp. at 6.)   Kucala also claims that he does not have the copies of documents Auto Wax is either seeking or speculating that Kucala may have, because Kucala claims that, in the normal course of his business, he utilizes a hard drive cleaning software that removes all "unimportant and unnecessary documents from his hard drives." (*Id.* at 2.)

However, at the hearing, Kucala asserted that he keeps no business documents on his hard drive, rather they are all contained on a cd-rom.

The Court is not persuaded that the normal course of one's business is to delete business correspondence, e-mails, and invoices. Kucala has over 200 customers, but only produced two invoices - the Court is stunned that a person can run a business without keeping customer files that would include letters and invoices. Further, the contradicting statements regarding what types of documents were deleted - business or personal - belies Kucala's claims that only personal documents were deleted.

In addition, the fact that Auto Wax somehow acquired the letters from EcoLab and Mr. Kodate show that, at some point, Kucala was in possession of these letters but failed to preserve them - which brings the Court to its next point - that Kucala was deciding for himself what he deemed relevant and discarding anything he deemed irrelevant. The existence of these two relevant letters proves that there is a great possibility that more of these letters exist, or did exist at one point, and that Kucala should have maintained them. Kucala claims ignorance as to the procedures of litigation, but he admitted that the Court is the only body that has the authority to declare discovery relevant. He also admitted that he did not inform the Court nor

Auto Wax that he had discarded an old computer at the end of 2002, although he testified that he knew the importance of discovery and preserving evidence. He only stated that the computer crashed and was of no use to him.

Also frustrating to the Court was Kucala's behavior at the hearing. Kucala continuously provided vague and nonresponsive answers to questions posed by Auto Wax. For example, he would state that he did not know the answers to certain questions, because he either did not read Mr. Velasco's report, did not review the transcript of his own deposition, did not know if an order existed against Auto Wax in the Mark V or other litigation, and was generally ignorant of the litigation process. (*Id.* at 28.) To the Court, Kucala's obfuscating, as well as his semantic games and memory lapses damaged his credibility and appeared to serve the sole purpose of frustrating the proceedings. That Kucala could not recall any of his deposition testimony or that he did not know the names of any of his vendors is simply incredible.

Finally, Kucala's claims that his fear that Auto Wax would not honor the protective order led him to delete documents from his computer are unfounded. Even after a teleconference with Judge Lefkow, Auto Wax, and himself on February 27, 2003, Kucala "continued to believe that Auto Wax could dupe the Court and

17

violate the protective order at will and he mistakenly reacted to that reality." (Pl.'s Resp. at 5.)  Kucala asks the Court to sympathize with his state of mind and to note the "damning statement" provided to him by Mark V, which led to his fears.

The Court does not find Kucala's paranoia justifiable nor reasonable. As the old adage goes, one cannot believe everything one hears. A reasonable person would not ignore a court order based on a "damning statement" made by a single third party, a disgruntled litigant, no less; and if Kucala had bothered to investigate the matter before he himself proceeded to violate a court order, he would have learned that Auto Wax was not found to have violated the protective order in the Mark V Litigation, and thus, his fear was unfounded.

The case law in this circuit is clear that Kucala's subjective state of mind is of no consequence to the issue of fault. The Court finds that Kucala was at fault by acting unreasonably as well as acting with gross negligence and in flagrant disregard of the court order by speciously deleting files, in "the wee hours" of the morning, hours before Auto Wax's computer specialist was to take an image of Kucala's computer – and likely even before this time. Kucala entreats the Court to believe him – that he provided all the relevant information to Auto Wax. But, given all of the evidence before the Court, how

is the Court to substantiate the veracity of his claim? Like in *Methe*, the Court may never find out what files were deleted. The possible prejudice to Auto Wax is enormous, or perhaps inconsequential. Kucala's actions have all but prevented adequate discovery in this case, and severely limited the fact finder's ability to do its job. Kucala argues that a default judgment would serve as a windfall to Auto Wax, but the opposite result, allowing Kucala to proceed with his case, would benefit him and would result in a slippery slope of future egregious behavior by litigants. Kucala cannot now claim that he would be prejudiced–he is represented by counsel and went against counsel's advice by using Evidence Eliminator on his computer. Why he strayed from his attorney's opinion perplexes the Court, but he should be sanctioned for destroying evidence.

## CONCLUSION

Kucala has engaged in egregious conduct by his flagrant disregard of a court order requiring him to allow inspection of his computer and his utter lack of respect for the litigation process. By using a computer program called Evidence Eliminator to delete documents from his computer, or in the alternative, to "clean" his hard drive, Auto Wax has been severely prejudiced in that relevant documents may have been lost or are still discoverable but only by Auto Wax incurring undue delay and cost.

The Court finds that Kucala's actions were unreasonable, and he is at fault for not preserving evidence in his control, over which he had a duty to maintain.   Therefore, the Court recommends that the appropriate sanction to impose upon Mr. Kucala is a dismissal of his suit against Auto Wax and ordering him to pay Auto Wax's attorneys' fees and costs incurred in defending this motion.

However, the attorneys' fees and costs should be calculated from the time that Kucala first ran the Evidence Eliminator program on his computer, up to and including the time that the parties appeared before the Court for the hearing on this motion. The Court finds this limited time frame reasonable, although the egregious conduct which is being sanctioned quite possibly has been occurring since July 2002.   Nevertheless, it was not until the computer imaging occurred that the installation of the Evidence Eliminator software was discovered, and Mr. Velasco indicated that it appears to have first been implemented on a large scale on February 25, 2003.   Therefore, the Court recommends that Auto Wax be awarded all reasonable attorneys' fees and costs related to the issue of sanctions against Kucala from February 25, 2003 through April 21, 2003.

The Court further recommends to the district court that, due to the likelihood that Auto Wax would suffer severe prejudice in

defending itself in the underlying action, in light of Kucala's egregious conduct, this case be dismissed with prejudice.

DATED: May 23, 2003          RESPECTFULLY SUBMITTED:

ARLANDER KEYS
United States Magistrate Judge


Counsel have ten days from the date of service to file an objection to this Report and Recommendation with the Honorable Joan H. Lefkow. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). A failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).